153 F.3d 1005
 98 Cal. Daily Op. Serv. 6724, 98 Cal. Daily
Op. Serv. 9309
Robert Wong SZE, Wah Chung Kwan, Nam Dai Huynh; Ying Yeun
Chiang; Danh Thi Thanh Nguyen; Yuk Ping Fong
Tse; Chun Fung Yu-Seto; Alexander Ho
Jeung Leung, Plaintiffs-Appellants,
v.
IMMIGRATION AND NATURALIZATION SERVICE; Janet Reno,
Attorney General; Doris Meissner, I & NS Commissioner;
Natalie Vedder, Director, Nebraska Service Center, I & NS;
Thomas Schiltgen, District Director, I & NS; Lois C.
Chappell, Deputy Assistant District Director, Citizen
Branch, I & NS, San Francisco; Louis J. Freeh, Federal
Bureau of Investigation; Federal Bureau of Investigation;
Department of Justice, Defendants-Appellees.
 No. 97-16495.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted June 10, 1998.
Decided Aug. 28, 1998.
 
 Eugene C. Wong and Robert G. Ryan, San Francisco, CA, for plaintiffs-appellants.
 William C. Erb, Office of Immigration Litigation, United States Department of Justice, Washington, DC, for defendants-appellees.
 Appeal from the United States District Court for the Northern District of California; Samuel Conti, District Judge, Presiding. D.C. No. CV 97-00569-SC.
 Before: BROWNING, GOODWIN and SCHROEDER, Circuit Judges.
 GOODWIN, Circuit Judge:
 
 
 1
 Sze et al. ("Plaintiffs") appeal the grant of summary judgment in favor of the Immigration and Naturalization Service et al. ("Defendants"), and denial of Plaintiffs' motion for summary judgment. Plaintiffs seek a writ of mandamus ordering the Immigration and Naturalization Service ("INS") to grant or deny their naturalization applications, and also seek certification of a class of similarly situated applicants. We conclude that we lack Article III case or controversy jurisdiction to consider this appeal, inasmuch as Plaintiffs have all been naturalized, and accordingly, we dismiss this appeal as moot.
 
 I. BACKGROUND
 
 2
 Plaintiffs applied for naturalization to become United States citizens and were examined by an INS officer, however, more than 120 days lapsed and the INS still had not made a determination to grant or deny their applications. Most of the delays were caused by a combination of fingerprint processing overloads at the Federal Bureau of Investigation ("FBI") and loss of applicant files by the INS. When Plaintiffs did not receive a determination within 120 days, they filed this action, relying on 8 U.S.C. § 1447(b),[1] as well as 8 C.F.R. §§ 335.3(a) and 312.5(b),[2] for their three causes of action: violation of administrative regulations; unreasonable delay under 5 U.S.C. § 706(1) of the Administrative Procedure Act ("APA"); and failure to act in accordance with law under 5 U.S.C. § 706(2)(a) of the APA. Plaintiffs sought class certification and a declaratory judgment that the INS had violated the above-mentioned code sections and federal regulations, by failing to make a determination to grant or deny Plaintiffs' and potential class members' naturalization applications within 120 days after their examinations. Plaintiffs also sought issuance of a writ in the nature of mandamus to compel the INS on remand to make a determination, under 8 U.S.C. § 1447(b), to grant or deny their naturalization applications within 120 days.
 
 
 3
 The naturalization process is generally divided into four stages. First, the applicant must submit completed application materials to the INS. The materials must contain, inter alia, a legible set of fingerprints, criminal background information, and information reflecting good moral character. 8 U.S.C. § 1445(a); 8 C.F.R. §§ 334.2, 316.4, and 316.10. Second, the INS conducts a background investigation, which includes a fingerprint check by the FBI. 8 U.S.C. § 1446(a); 8 C.F.R. § 335.1. Neither the statute nor the regulations prescribe a time period within which the investigation must be completed.
 
 
 4
 Prior to September 1996, the INS would wait at least 60 days for the FBI to report on the status of the fingerprint check. If no response was received, the INS would schedule an applicant for a naturalization interview ("the examination") on the assumption that the FBI had no criminal record on the applicant. In September 1996, the INS doubled the waiting period from 60 to 120 days. In November 1996, the INS further altered its procedure at this stage, by requiring a definitive response on the applicant's fingerprints from the FBI before scheduling the examination or the oath ceremony.
 
 
 5
 At the third stage, the applicant is interviewed by an INS officer who will, except in limited cases, either grant or deny the naturalization application within 120 days of the interview. 8 C.F.R. § 335.3(a). In the event that the INS fails to render a decision in 120 days, the applicant may request an individual hearing in the appropriate United States District Court. 8 U.S.C. § 1447(b); 8 C.F.R. § 310.5. That court may either determine the matter itself, or remand the case to the INS with instructions. Id. An individual whose application is denied may seek review of the denial. 8 U.S.C. § 1447(a); 8 C.F.R. §§ 336.1-.2, 336.9.
 
 
 6
 The final stage of processing involves scheduling the applicant for the oath ceremony. See 8 U.S.C. §§ 1421, 1448; 8 C.F.R. §§ 310.3, 337.
 
 
 7
 The district court granted summary judgment in favor of Defendants on all claims and denied Plaintiffs' motion for summary judgment. Having decided against Plaintiffs on the legal issues, the district court found that it "need not make a determination on plaintiffs' motion for class certification." The district court entered judgment on July 24, 1997, and Plaintiffs timely filed their notice of appeal on August 5, 1997.
 
 
 8
 During the pendency of this action in the district court, the INS naturalized some of the named plaintiffs. More were naturalized prior to Plaintiffs filing their opening brief on appeal, and the final two were naturalized on October 21, 1997, just prior to Defendants filing their responsive brief. A week earlier, on October 14, 1997, Defendants had filed with this court a motion to dismiss for lack of jurisdiction, which our court's Appellate Commissioner denied without prejudice. Pursuant to the Commissioner's decision, Defendants have renewed this argument before the panel.
 
 II. DISCUSSION
 
 9
 Defendants contend that we lack jurisdiction to decide this appeal, inasmuch as the case has been mooted by the naturalization of the named plaintiffs, none of whom are alleging past or present injury from the INS's purported illegal action. Plaintiffs offer a number of arguments in response, some of which seek to preserve jurisdiction so that Plaintiffs can pursue class certification.
 
 
 10
 At the outset, Plaintiffs contend that one or another of the ordinary exceptions to the mootness doctrine applies, which would allow us to consider, on the merits, their appeal of the district court's ruling. Primarily, Plaintiffs argue that this is a case involving "voluntary cessation of allegedly illegal conduct" whereby a case does not become moot "unless there is no reasonable expectation that the wrong will be repeated." Public Utilities Comm'n of State of Cal. v. F.E.R.C., 100 F.3d 1451, 1460 (9th Cir.1996) (internal quotations omitted). For the exception to apply, however, the INS's voluntary cessation "must have arisen because of the litigation." Id.
 
 
 11
 According to Plaintiffs, the timing of the INS's decisions to naturalize the named plaintiffs indicates that the applications were approved because of this litigation. Further, Plaintiffs assert that the INS's actions on the cases of two potential plaintiffs occurred because Plaintiffs drew particular attention to these cases. However, it appears that the INS acted on these naturalization applications in due course, albeit significantly delayed due course. Thus, Plaintiffs have demonstrated no more than correlation; they have not shown causation.
 
 
 12
 Neither can Plaintiffs demonstrate that there is a reasonable expectation that the wrong will be repeated. Prior to the filing of this complaint, the INS altered the naturalization application process, so that the agency now waits for fingerprint check results before scheduling the naturalization examination. As a result, the class of potential plaintiffs has effectively been closed. Thus, there is little "likelihood of recurrence of the challenged activity." See Armster v. United States Dist. Court, 806 F.2d 1347, 1358 (9th Cir.1986).
 
 
 13
 Plaintiffs alternatively assert that this case falls under the "capable of repetition, yet evading review" mootness exception. See Weinstein v. Bradford, 423 U.S. 147, 149, 96 S.Ct. 347, 46 L.Ed.2d 350 (1975). Inasmuch as the named plaintiffs have been naturalized, it is highly unlikely that they would ever have to repeat the process. Thus, there is no "reasonable expectation that the same complaining party would be subjected to the same action again." Id. at 149, 96 S.Ct. 347.
 
 
 14
 Plaintiffs' other arguments against mootness rely on the fact that they have sought class certification in this action, and that there are potential plaintiffs who have waited more than 120 days for a decision regarding their applications for naturalization. (There appear to be at most four potential plaintiffs.) Although Plaintiffs have come to us appealing an adverse decision on the merits, they have also requested that the panel "remand the case for consideration of possible intervention by other members of the putative class."[3]
 
 
 15
 The Supreme Court has held that, even in the absence of prior class certification, the resolution of the named plaintiff's substantive claim does not necessarily moot all other issues in the case. See United States Parole Comm'n v. Geraghty, 445 U.S. 388, 402, 100 S.Ct. 1202, 63 L.Ed.2d 479 (1980). "We think that in determining whether the plaintiff may continue to press the class certification claim, after the claim on the merits 'expires,' we must look to the nature of the 'personal stake' in the class certification claim." Id.[4] Ultimately holding that the case was not moot, the Court was nevertheless careful to note that "[o]ur holding is limited to the appeal of the denial of the class certification motion. A named plaintiff whose claim expires may not continue to press the appeal on the merits until a class has been properly certified." Id. at 404, 100 S.Ct. 1202.
 
 
 16
 This case does not fall squarely under Geraghty, however, inasmuch as the district court never actually ruled on Plaintiffs' motion for class certification. Yet our recent decision in Wade v. Kirkland, 118 F.3d 667 (9th Cir.1997), indicates that, where the issue of class certification was never decided by the district court, a named plaintiff whose individual claim has expired may nonetheless have standing to bring an appeal under certain circumstances, i.e., "where the putative class appears to be so transitory that a failure to rule may mean that a class will never be assembled." Id. at 669.
 
 
 17
 The Wade court found that that case potentially "present[ed] a classic example of a transitory claim that cries out for a ruling on certification as rapidly as possible." Id. at 670. The case involved a challenge to the working conditions of "chain gang" labor at a Nevada county jail, which housed pretrial detainees and misdemeanants, i.e., short-term inmates. The named plaintiff was transferred from that facility while his motion for class certification was pending, and as a result the district court dismissed the action as moot. Id. at 669.
 
 
 18
 Although recognizing that there are instances where it is "appropriate in the interest of judicial economy to resolve a motion for summary judgment ... prior to ruling on class certification," the Wade court determined that "[t]his is not one of those cases." Id. at 670. The court held that the named plaintiff, whose claim had expired, nevertheless had standing to bring the appeal in order to seek a decision on the outstanding class certification motion. As a result, the court remanded for a determination of whether the class claims were in fact inherently transitory. Id.
 
 
 19
 Thus, we inquire whether Plaintiffs' claims appear to be inherently transitory. An inherently transitory claim is one where "there is a constantly changing putative class," id., citing Gerstein v. Pugh, 420 U.S. 103, 110 n. 11, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975), and where "the trial court will not have even enough time to rule on a motion for class certification before the proposed representative's individual interest expires." Geraghty, 445 U.S. at 399, 100 S.Ct. 1202.
 
 
 20
 There is no inherently transitory claim here. The putative class is not constantly changing in the sense that some members leave the class while others come in. Rather, this is a constantly shrinking class. The INS has changed its procedures, and meanwhile the named plaintiffs' claims, as well as those of the various putative class members, have been and are continuing to be resolved.
 
 
 21
 As a result, Plaintiffs' reliance on Wade is misplaced. However, Plaintiffs alternatively contend that they have standing to bring this appeal and are entitled to a remand for possible intervention by putative class members, under Kennerly v. United States, 721 F.2d 1252, 1260 (9th Cir.1983). See Wade, 118 F.3d at 670 n. 1 (noting that, although "Kennerly did not discuss the standing issue in any depth," the court "implicitly recognized standing on appeal ... despite the mootness of the named plaintiff's claim"). Kennerly, however, is also distinguishable.
 
 
 22
 In Kennerly, the named plaintiff died during the pendency of the district court proceedings, and the personal representative of his estate was substituted in. The district court granted summary judgment against the plaintiff. See Kennerly, 721 F.2d at 1255-1256. As part of his suit, plaintiff had requested injunctive relief on behalf of himself and a putative class, however, the motion for class certification was never decided by the district court. Id. at 1260 n. 3. On appeal, this court acknowledged that plaintiff's claim for injunctive relief became moot by virtue of his death. Id. at 1260. Nevertheless, the court decided that "[b]ecause ... this action was initiated and proceeded in the district court as a purported class action, other [putative class] members may have relied on [plaintiff's] asserted representation of the class." Id. at 1260 (footnote omitted). As a result, the court remanded the case "for consideration of possible intervention by other members of the putative class." Id.
 
 
 23
 Here, Plaintiffs have not shown that the putative class members have relied on Plaintiffs' asserted representation of the class. This is not a situation where, but for the "relation back" of a later class certification, putative class members' claims would be barred by the statute of limitations. See, e.g., State of Alaska v. Suburban Propane Gas Corp., 123 F.3d 1317, 1321 (9th Cir.1997). Rather, statutory law provides for individuals to bring an action in district court if the INS has taken more than 120 days to act on their naturalization applications. 8 U.S.C. § 1447(b); 8 C.F.R. § 310.5. Given the availability of this alternative ground for relief, Plaintiffs' unsupported assertions of possible reliance are an insufficient basis for our jurisdiction.
 
 
 24
 We conclude that we lack jurisdiction under Article III to consider this appeal, based on the expiration of the claims of all named plaintiffs during the pendency of this appeal. None of the exceptions to the mootness doctrine applies, including those exceptions which depend on Plaintiffs having sought class certification.
 
 
 25
 APPEAL DISMISSED. No party to recover costs.
 
 
 
 [1]
 8 U.S.C. § 1447(b) provides: "If there is a failure to make a determination under section 1446 of this title before the end of the 120-day period after the date on which the examination is conducted under such section, the applicant may apply to the United States district court for the district in which the applicant resides for a hearing on the matter. Such court has jurisdiction over the matter and may either determine the matter or remand the matter, with appropriate instructions, to the Service to determine the matter."
 
 
 [2]
 8 C.F.R. §§ 335.3(a) and 312.5(b) deal with the 120-day requirement. 8 C.F.R. § 335.3(a) provides in pertinent part: "A decision to grant or deny the application shall be made at the time of the initial examination or within 120 days after the date of the initial examination of the applicant for naturalization under § 335.2."
 
 
 [3]
 At the time Plaintiffs filed their opening brief on appeal, some individual claims were still live. It was only after this, but before the INS filed its response, that the remaining Plaintiffs' claims had expired by virtue of their having been naturalized. It was only then that the class certification motion became crucial to this appeal
 
 
 [4]
 Prior to Geraghty, whether the district court had certified the class "significantly affect[ed] the mootness determination." Sosna v. Iowa, 419 U.S. 393, 399, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975). In order for a class action to remain a live controversy after resolution of the named plaintiff's claim, the class had to have been certified prior to resolution of that claim. See Vun Cannon v. Breed, 565 F.2d 1096, 1098 (9th Cir.1977). If the district court never certified the class, potential class members had no "jurisprudential existence" by which to assert a claim. Id. at 1099